IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

JOHN STRONG,

      Plaintiff,

vs.                                    1:21-cv-00418-KWR-LF

SCOUT SECURITY, INC., SCOUT
SECURITY LIMITED, DANIEL
ROBERTS, DAVE SHAPIRO,
ANTHONY BROWN, and SOL
MAJTELES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss (**Doc. 18**), filed June 24, 2021. Having reviewed the parties' pleadings, exhibits, and the relevant law, the Court finds that the motion is well taken, and therefore is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH LEAVE TO AMEND**.

## BACKGROUND

This case arises from alleged misrepresentations regarding a stock transaction. Defendant Scout Security, Inc. ("SSI") is an American company, based in Chicago, Illinois, that sells self-installed, wireless, home security systems. The company was founded in 2013 by Defendants Daniel Roberts and Dave Shapiro. **Doc. 1-1, Ex. A, ¶¶ 1, 3**. In "2014 or 2015," Plaintiff John Strong became an investor in SSI after Defendants Roberts and Shapiro "reached into Santa Fe, New Mexico (where Mr. Strong lived), and made numerous calls and inquiries to Mr. Strong to convince him to invest in the company." *Id.* **¶¶ 22–23**.

The business grew, and in 2017, SSI announced an initial public offering ("IPO") on the Australian Securities Exchange. *Id.* **¶¶ 24–25**. Defendant Scout Security, Ltd. ("Scout Limited"), a publicly traded Australian company, was created to facilitate the IPO, and later acquired SSI. *Id.* **¶¶ 4, 25**. By now, Plaintiff owned approximately $1 to $1.4 million in SSI interests, which were then "transfer[ed]" to Scout Limited and "convert[ed]" into stock. *Id.* **¶¶ 26–27**. Plaintiff was then appointed as a non-executive chairman of the Board of Directors of Scout Limited and entered into an agreement related to his appointment. *See* **Doc. 1-1, Ex. A, ¶ 27**; **Doc. 25, Ex. 4, at 1**. Defendants Roberts, Shapiro, Anthony Brown, and Sol Majteles ("the Individual Defendants") were also appointed as members of the Scout Limited Board. *See* **Doc. 1-1, Ex. A, ¶ 28**.

Then, in January 2018, Plaintiff "fell gravely ill." *Id.* **¶ 33**. In order to cover his growing medical bills, Plaintiff decided to sell his stock investment in Scout Limited. *Id.* **¶ 34**. Plaintiff contacted the investment firm that managed his stock, Hartley, and they informed him that he would need to obtain Board approval from Scout Limited prior to the sale. *Id.* Plaintiff alleged that he "reached out" to the Board members about his desire to sell his stock, but the Board refused to grant the requisite permission to allow Hartley to sell Plaintiff's stock. *Id.* **¶ 36**. Instead, Plaintiff alleged, "Defendants Brown and Majteles misrepresented to Mr. Strong that he could not sell his stock due to alleged legal restrictions as well as restrictions created by the company's governing documents because Mr. Strong was a board member." *Id.* **¶ 35**. Plaintiff alleged that "there was no legal basis" for such a claim. *Id.* **¶ 36**.

As Plaintiff's health condition continued to deteriorate, Plaintiff repeatedly discussed his desire to sell his stock to cover medical expenses with the Board. However, Plaintiff alleged that Defendants "continuously misrepresented…that he could not sell his stock…*unless* he agreed to

2

resign from his position on the Scout [Limited] Board." *Id.* ¶¶ **37–38** (emphasis in original). Plaintiff "investigated the allegations" made by the Board, particularly Defendants Majteles and Brown, that he could not sell his stock, and he "advised the Scout [Limited] Board that these allegations were false and that there were no legal restraints or restrictions on some of his stock." *Id.* ¶ **39**. Plaintiff continued to ask the Scout Limited Board to grant permission for Hartley to sell his stock, but they continued to maintain their position. *Id.* Plaintiff alleged that the Scout Limited Board maintained this prohibition "[k]nowing that his financial situation and health condition would ultimately force Mr. Strong to sell more of his stock due to the falling stock value and force him to resign as chairman of the board." *Id.*

Plaintiff alleged that Defendants Majteles and Brown "made these misrepresentations to Mr. Strong with the intent to force Mr. Strong off the Scout Security Board while he was under financial duress." *Id.* ¶ **40**. Ultimately, in January 2019, Plaintiff was "forced to sell his Scout [Limited] stock at a loss" and resign from his Board position. *Id.* ¶ **41**. As a result, Plaintiff filed suit in the Second Judicial District Court, Bernalillo County, State of New Mexico alleging the following claims against Defendants:

| Count I: | Breach of Contract |
|---|---|
| Count II: | Breach of the Duty of Good Faith and Fair Dealing |
| Count III: | Tortious Interference with Contract |
| Count IV: | Fraud and Misrepresentation |
| Count V: | Violations of the Securities Exchange Act § 10(b) (15 U.S.C. §78j(b)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5)) |
| Count VI: | Negligence |

Defendants removed this case to this Court (**Doc. 1**), and subsequently filed a motion to dismiss for failure to state a claim and also asserted that Plaintiff had failed to allege any basis for personal jurisdiction over Defendants (**Doc. 18**).

## LEGAL STANDARDS

When jurisdiction is contested, the plaintiff has the burden of establishing personal jurisdiction over the defendant. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004); *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). At this stage, where a pre-trial motion to dismiss is considered by a court without an evidentiary hearing, the plaintiff "need only make a prima facie showing of personal jurisdiction to defeat the motion." *See AST Sports*, 514 F.3d at 1057. The plaintiff can satisfy this burden by "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). This showing is "light." *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal quotations omitted); *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). In other words, in determining whether the requisite showing has been made, all factual disputes are resolved in the plaintiff's favor and, if uncontroverted by the defendant's affidavits, the well-pled factual allegations in the Complaint must be taken as true. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). Still, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading."

4

*Wenz*, 55 F.3d at 1508 (quoting *Pytlik v. Professional Resources, Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

## DISCUSSION

Defendants argue that Plaintiff's Complaint fails to allege sufficient facts to state a plausible claim on each of the six counts.  More specifically, Defendants argue that Plaintiff's Complaint contract and negligence claims lack specificity, and that Plaintiff fails to meet the heightened pleading standard for fraud claims.  Defendants also assert that Plaintiff's securities claim must fail because the stock at issue was traded on a foreign exchange.  Additionally, Defendants argue that Plaintiff has alleged no basis for jurisdiction over the Australian-based Defendants, and further, that Plaintiff has alleged no basis for personal jurisdiction over any Defendant for the common law claims.

In this case, Plaintiff has raised the possibility of jurisdictional discovery.  *See* **Doc. 25, at 9 n.3** ("If the Court should determine additional evidence is needed on the jurisdictional issues, it may and should grant Mr. Strong leave to conduct discovery on the limited issue of jurisdiction or hold an evidentiary hearing on the same.").  To the extent that this was intended as a motion for jurisdictional discovery, Plaintiff's summary request does not meet the Tenth Circuit standard. While jurisdictional discovery motions are liberally granted, "[t]he burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—is on the party seeking the discovery." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012) (internal alterations omitted) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010)).  Here, Plaintiff has not addressed the legal entitlement for possible jurisdictional discovery, nor has Plaintiff

demonstrated any prejudice.  Thus, Plaintiff's request is denied, and the Court will rule on the jurisdictional issues based on the parties' papers.

Resolving factual disputes in Plaintiff's favor, the Court concludes that Plaintiff has not met his burden to plead personal jurisdiction over any Defendant.  Because Plaintiff has failed to sufficiently plead jurisdiction over any Defendant, the Court declines to address the substantive merits of Plaintiff's Complaint.  *See Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1140 (D.N.M. 2011) ("When a defendant couples a 12(b) motion to dismiss for lack of personal jurisdiction with other issues, the court must first determine the jurisdictional issue…If jurisdiction is lacking, the court cannot render a valid judgment on the merits of the other issues.").

## I.   Whether this Court has Personal Jurisdiction over Defendants.

This case is brought to federal court based on diversity jurisdiction, and therefore, this Court is required to apply New Mexico law.  *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir. 2011) ("In a federal court diversity case, except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

"Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process."  *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 492 (10th Cir. 2012).  New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible."  *See Tercero v. Roman Cath. Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 316, 48 P.3d 50, 54; *Fireman's Fund*, 703 F.3d at 492–93.  The personal jurisdiction analysis, therefore, concerns only whether the exercise of personal jurisdiction offends due process.

"Due process requires both that the defendant [1] 'purposefully established minimum contacts within the forum State' and [2] that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In other words, "the contacts with the forum State must be such that the defendant should reasonably anticipate being haled into court there." *XMission*, 955 F.3d at 839–40 (internal quotations omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Yet, even if a plaintiff satisfies the minimum contacts requirement, the defendant can still defeat jurisdiction by presenting a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King Corp.*, 471 U.S. at 477.

**A.  Whether Defendants Have Sufficient Minimum Contacts with New Mexico.**

A defendant's contacts with the forum state can result in either general or specific jurisdiction. "A court may assert general jurisdiction over foreign [] corporations [or individuals] to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). The other type of personal jurisdiction is specific jurisdiction, meaning that the cause of action arises from a particular transaction of business or commission of a tortious act in which the defendant "purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *See Romero v. TitleMax of New Mexico, Inc.*, No. CV 17-775 KG/SCY, 2020 WL 4547294, at *2 (D.N.M. Aug. 6, 2020) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

### 1. General Jurisdiction.

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Benton*, 375 F.3d at 1080 (quoting *OMI Holdings*, 149 F.3d at 1091). Thus, for general jurisdiction to exist, Plaintiff must demonstrate that each Defendant's contacts with New Mexico were so "continuous and systematic" that the court could exercise personal jurisdiction over it even if the underlying suit is unrelated to its contacts with the state. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996); *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008).

Generally, "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *See Goodyear*, 564 U.S. at 924. Courts have considered several factors in assessing the relative strength of a defendant corporation's contacts with a forum, such as: "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation." *See Trierweiler*, 90 F.3d at 1533.

Defendants argue that there are no "continuous and systemic ties between Defendants and New Mexico," and therefore, this Court cannot exercise general jurisdiction over Defendants. *See* **Doc. 18, at 16**. Defendants SSI and Scout Limited assert that they have very little, if any ties, to New Mexico, and the Individual Defendants similarly explain that they have no connection to New

Mexico.  *Id.* at 16–18; **Doc. 28, at 12–13**.  In response, Plaintiff argues that there is general jurisdiction over Defendant SSI, alone, because it provides continuous services in New Mexico and "has an active, continuing relationship with its customers in New Mexico that amounts to a physical presence."  *See* **Doc. 25, at 14**.

Here, Plaintiff does not dispute Defendants' assertions that there is no general jurisdiction over any of the Individual Defendants.  *See id.*  Defendants Roberts and Shapiro are domiciled in Illinois.  *See* **Doc. 1-1, ¶¶ 6, 11**; **Doc. 18-2, Ex. B**; **Doc. 18-3, Ex. C**.  Defendants Brown and Majteles are domiciled in Australia.  *See* **Doc. 1-1, ¶¶ 14, 16**; **Doc. 18-4, Ex. D**; **Doc. 18-5, Ex. E**.  Accordingly, the Court concludes that there is no general jurisdiction over the Individual Defendants.  Additionally, Plaintiff does not appear to dispute that there is no basis for general jurisdiction over Defendant Scout Limited, an Australian corporation, and the Court concludes that there is no evidence supporting general jurisdiction.  *See* **Doc. 18-6, Ex. F**.  Therefore, the Court will only address whether general jurisdiction exists over SSI.

Here, the evidence does not provide any basis for finding that Defendant SSI is essentially "at home" in New Mexico.  The uncontroverted evidence establishes that Defendant SSI is a Delaware corporation with its principal place of business in Illinois.  *See* **Doc. 1-1, ¶ 3**.  Defendant SSI is not registered to do business in New Mexico; has not appointed an agent for service of process or otherwise in New Mexico; has no telephone listing or office in New Mexico; has no bank account, real property, or employees in New Mexico; nor does it directly advertise, market, or solicit business in New Mexico.  *See* **Doc. 18-1, Ex. A, ¶¶ 5–11**; *see also Rosenberg v. Deutsche Bank AG*, No. 11-CV-02200-WJM-CBS, 2012 WL 1963356, at *6 (D. Colo. May 22, 2012) (finding no general jurisdiction where defendants, although registered with the Colorado Secretary of State, had no official presence in Colorado where they were not incorporated, did not have their

principal place of business, and did not own any property, maintain any offices, or employ any individuals in Colorado).

Still, Plaintiff asserts that SSI's offer of home security products, and the monitoring services for these products, on its website shows that it is "an active provider of services to those in New Mexico who purchase [SSI] Products." *See* **Doc. 25, at 14**.   Therefore, Plaintiff argues, these commercial transactions by Defendant SSI "are not passive, one-time engagements but rather amount to continuous contact with New Mexico [similar] to a physical presence." ***Id.***  The Court rejects this argument.

"The case law sets the bar quite high [by] denying general jurisdiction absent substantial sales." *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) ("A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum."). Thus, "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *See Helicopteros Nacionales*, 466 U.S. at 418.

Defendant SSI has presented undisputed evidence that "[s]ince it began selling products via the internet, [it] has sold approximately $4,384.00 in goods and approximately $4,428.00 in subscription services in New Mexico[,] [and these] sales of goods and services in New Mexico account for less than one percent (1%) of all of [its] sales." *See* **Doc. 18-1, Ex. A, ¶ 13**.  Here, such a small volume of business, which accounts for less than 1% of all of SSI's sales and totaling less than $10,000, is insufficient to warrant the exercise of general jurisdiction, and insufficient to overcome the uncontroverted evidence presented by Defendant establishing that it has little to no

presence in New Mexico.  *See Fabara v. GoFit, LLC*, 308 F.R.D. 380, 403 (D.N.M. 2015), *as amended* (Aug. 20, 2015) (concluding that the plaintiff failed to establish general jurisdiction over defendant GoFit, LLC in New Mexico where GoFit was an Oklahoma corporation with its principal place of business in Oklahoma, and "ha[d] sold only $20,842.36 worth of products to New Mexicans through its website in over nine years").

In sum, Defendant SSI's "lack of official presence in New Mexico makes it clear that [it has] not engaged in continuous and systemic activity in the forum state."  *See Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *10 (D.N.M. Sept. 27, 2012). Plaintiff's bare allegations, which are refuted by the evidence proffered by Defendant, cannot establish that Defendant SSI has a continuous and systematic presence in New Mexico.  Therefore, the Court concludes that Plaintiff has not met the prima facie burden of demonstrating that the Court has general jurisdiction over Defendant SSI.  In sum, the Court concludes that there is no general jurisdiction over any Defendant.

### 2.  Specific Jurisdiction

Specific jurisdiction is "premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Dudnikov*, 514 F.3d at 1078. For specific jurisdiction to exist, a plaintiff must show that (1) the defendant has "purposefully directed [its] activities at residents of the forum" and (2) that "the litigation results from alleged injuries that arise out of or relate to those activities."  *OMI Holdings*, 149 F.3d at 1090–91 (internal quotations omitted).

First, purposeful direction "requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State,

so that it has manifestly availed itself of the privilege of conducting business there." *See XMission*, 955 F.3d at 840 (cleaned up); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations omitted). Thus, "the unilateral activity of another party or a third person…or the mere foreseeability that [a defendant's] actions may cause injury in that jurisdiction" is insufficient. *See XMission*, 955 F.3d at 840–41 (internal quotations and citations omitted). In general, purposeful direction may be established under four frameworks, including: (1) continuing relationships with forum state residents; (2) deliberate exploitation of the forum state market; (3) harmful effects in the forum state; and (4) the stream of commerce theory. *See Old Republic*, 877 F.3d at 904–08, 909 n.21.

Second, the "arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *See XMission*, 955 F.3d at 840. Thus, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *See Ford Motor Co.*, 141 S. Ct. at 1025 (internal quotations and alterations omitted). In sum, for a defendant to avail itself to specific personal jurisdiction, the plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*" *See Dudnikov*, 514 F.3d at 1077 (emphasis in original).

Plaintiff argues that this Court has specific jurisdiction over Defendants because Defendants "purposefully reach[ed] into New Mexico" to cause Plaintiff harm and were aware that "the effects of their actions would be felt by Mr. Strong in New Mexico." *See* **Doc. 25, at 12**.

Additionally, Plaintiff asserts that there is specific jurisdiction over the Individual Defendants because they not only "actively participate[d] in the alleged misconduct and engage[d] in tortious activity," but that the Individual Defendants "ratified" Defendant SSI and Scout Limited's conduct. *Id.* Plaintiff further argues that this Court has specific jurisdiction over Defendant Scout Limited because it "reach[ed] out beyond one state" and created "continuing relationships and obligations" with Plaintiff through Scout Limited's employment of Plaintiff. *Id.* **at 13**. Thus, Plaintiff alleges specific jurisdiction over Scout Limited is proper because it "employed Mr. Strong in New Mexico and the alleged misconduct in this case arises from breaches related to" Plaintiff's employment agreement. *Id.*

Defendants contend that there is no basis for specific jurisdiction. Defendants assert that Plaintiff has failed to allege any actions taken by them which were "(i) 'purposefully directed' at New Mexico, or (ii) taken in connection with the allegations of any wrongdoing alleged the Complaint." *See* **Doc. 18, at 14**. Defendants assert that "the only allegations that tie any action by any Defendant to New Mexico are that more than five years *before* the actions on which Plaintiff's claims are based, [when] Defendants Shapiro and Roberts, officers of SSI, allegedly made some calls and inquiries to Plaintiff in New Mexico to 'convince him to invest in the company.'" *Id.* (emphasis in original). Defendants maintain that even if these prior phone calls were considered, Plaintiff cannot establish specific jurisdiction because Plaintiff does not allege that he was "injured because of anything done or said in those calls." *Id.* **at 14–15**. Defendants also assert that Plaintiff does not allege that the contract or agreements which forms the basis for his claims "were sent to him in New Mexico by Defendants," and Plaintiff's own actions "cannot form the link with the forum state." *Id.* **at 15**.

Here, Plaintiff attempts to establish purposeful direction under two frameworks: harmful effects and continuing relationships. Therefore, the Court must determine whether Plaintiff has made a prima facie showing based on contacts under these purposeful direction frameworks.

### a. Continuing Relationships.

The "typical" purposeful direction analysis looks to an out-of-state defendant's "continuing relationships and obligations with citizens of the forum state." *See Old Republic*, 877 F.3d at 905 (citing *Burger King*, 471 U.S. at 473). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum." *See AST Sports*, 514 F.3d at 1059; *Old Republic*, 877 F.3d at 905 (A "defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Thus, in determining whether a contractual relationship demonstrates a defendant's purposeful minimum contacts with a forum, the Court must consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *See AST Sports*, 514 F.3d at 1058 (*Burger King Corp.*, 471 U.S. at 479). "An out-of-state defendant's solicitations of or direct communications with forum state residents also provide 'some evidence' suggesting purposeful direction." *Old Republic*, 877 F.3d at 905 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1277 (10th Cir. 2005)).

The contract at issue here is the employment agreement between Defendant Scout Limited and Plaintiff, appointing Plaintiff to the Scout Limited Board of Directors. Here, the Court concludes that Plaintiff has not met the light burden to show specific jurisdiction over Defendant Scout Limited.[1] The Court must examine "the quantity and quality" of Scout Limited's contacts

---

[1] Plaintiff alleged that Defendants Scout Limited *and* SSI "breached their contract," *see* **Doc. 25, at 12**, **Doc. 1-1, Ex. A, at 8**. However, Plaintiff plead facts and provided evidence only of the employment agreement with Scout Limited; Plaintiff did not plead with specificity, and the Court cannot find, any evidence of a contract or employment

with New Mexico.  *See OMI Holdings*, 149 F.3d at 1092.  Plaintiff's evidence of communications

with Scout Limited is scant.  The record bears two documents that appear to be from Scout Limited,

addressed to Plaintiff in Albuquerque, New Mexico.  *See* **Doc. 25-3, Ex. 3**; **Doc. 25-4, Ex. 4**.

Defendant alleges that it had "no way of knowing where Plaintiff was at any time," **Doc. 28, at 15**

**n.9**, however, resolving factual disputes in Plaintiff's favor, the Court finds that Defendant Scout

Limited was aware that Plaintiff resided in New Mexico.

Regardless, Defendant's awareness of Plaintiff's location and the Board appointment

agreement are insufficient to establish minimum contacts and subject Defendant to this Court's

jurisdiction.  Notably, the record does not reveal how or even where the parties pursued their prior

negotiations and any subsequent course of dealing.  Plaintiff has not alleged that Defendant Scout

Limited, or its agents at the time, initiated or negotiated the Board agreement with Plaintiff through

phone calls, emails, or other communication directed to New Mexico.  *See Nat'l Bus. Brokers, Ltd.*

*v. Jim Williamson Prods., Inc.*, 16 F. App'x 959, 962–63 (10th Cir. 2001) ("[Plaintiff] NBB has

made no showing that [defendants] Williamson and JWP signed the listing agreements or initiated

the telephone, facsimile, and e-mail communications as part of a specific or intentional effort to

conduct business within the State of Colorado.").  Further, the terms of the Board membership

agreed upon by the parties do not implicate New Mexico, require that Board meetings be held or

attended in New Mexico, or contemplate future consequences in the state of New Mexico.

Moreover, Plaintiff has not alleged that he performed tasks in New Mexico at Defendant's

direction; nor has Plaintiff alleged that he received work items, like a laptop or work phone, from

Defendant in New Mexico to fulfill his board membership obligations.  Additionally, Plaintiff has

not pled or made any showing that Defendant had an expectation that Plaintiff would work in New

_____

relationship with Defendant SSI.  *See* **Doc. 18-1, Ex. A, ¶ 2** ("John Strong was never an employee of SSI and never served as a member of its Board of Directors.").

Mexico or that Defendant envisioned a long-term partnership with him in New Mexico. *Cf. Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 510 (E.D. Ky. 2019) ("Defendant initiated contract negotiations with [plaintiff] Hall, whom Defendant 'necessarily knew was based in Kentucky.' Not only was Defendant knowledgeable of Plaintiff's desire to work from Kentucky, but her doing so was specifically bargained for in the negotiation of the employment contract.").

Overall, the facts presented fail to show Defendant Scout Limited reached out from Australia, through its agents or otherwise, and specifically sought to do business in New Mexico, negotiated a contract envisioning significant and long-term obligations within the state of New Mexico, or conducted continuous communications with Plaintiff in New Mexico. Therefore, because the Court finds that Plaintiff has not sufficiently alleged that Defendant Scout Limited purposefully directed its activities at New Mexico, it need not consider the second prong of the specific jurisdiction test—whether Plaintiff's injuries arise out of Defendant's contacts with New Mexico.

### b.  Harmful Effects.

"Purposeful direction may be established when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." *See XMission*, 955 F.3d at 841 (internal alterations omitted) (quoting *Old Republic*, 877 F.3d at 907). In such a case, the plaintiff must show "(a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* (quoting *Old Republic*, 877 F.3d at 907); *see also Dudnikov*, 514 F.3d at 1072.

As to the first element of the harmful effects test, the Court finds, and it does not appear that Defendants dispute, that Plaintiff has alleged sufficient facts to conclude that the Individual Defendants acted intentionally to commit the alleged torts. As to the third element, the parties

have disputed whether Defendants were aware that Plaintiff lived in New Mexico, but absent evidence to contradict Plaintiff's assertion, the Court must resolve this factual dispute in Plaintiff's favor and finds that Defendants were aware that Plaintiff resided in New Mexico.  Accordingly, the Court finds that Plaintiff has alleged sufficient facts to permit an inference that Defendants were aware that the brunt of the injury would be felt in New Mexico.

However, Plaintiff's allegations fall short on the second element, express aim.  The Court infers that Plaintiff asserts that the communications between Plaintiff and the Individual Defendants about Plaintiff's decision to sell his stock, *e.g.*, **Doc. 1-1, ¶¶ 35, 37**, **Doc. 25, at 12**, are contacts demonstrating that the Individual Defendants purposefully directed their activities at New Mexico.[2]

"Significantly, the relationship between a defendant and the forum State 'must arise out of contacts that the defendant *himself* creates with the forum State,' and those contacts must be 'with the forum State itself, not the defendant's contacts with persons who reside there,' such as a plaintiff."  *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016) (emphasis in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  Therefore, "a plaintiff's contacts with the forum State cannot be decisive in determining whether the defendant's due process rights are violated."  *Id.* (internal quotations omitted).  The Tenth Circuit has repeatedly affirmed that "a defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction."  *Accord Dental Dynamics, LLC v. Jolly Dental Grp.*, LLC, 946 F.3d 1223, 1231 (10th Cir. 2020).

---

[2] After examining Plaintiff's Complaint and supporting motion, the Court cannot discern what other contacts, if any, Plaintiff seeks to allege that Defendants SSI and Scout Limited, through its agents or the Individual Defendants, took directed at New Mexico.

Based on these principles, the Court finds Plaintiff cannot satisfy the second prong.  The Individual Defendants allegedly acted in Illinois and Australia, in connection with the management of an Australian company, to take the tortious actions at issue here.  Unlike the defendants in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), who acted with the "express aim" to halt a Colorado-based plaintiff's auction occurring in Colorado, the forum state, here, the Individual Defendants' conduct occurred entirely outside of New Mexico, is wholly unrelated to New Mexico, and Plaintiff serves as the only link to the state of New Mexico.  *See Anzures*, 819 F.3d at 1281 (explaining that in *Dudnikov* "it was not only important that the plaintiff felt the effects of the defendants' actions in the forum state but that the defendants' actions targeted the forum state"); *see also Calder v. Jones*, 465 U.S. 783, 788–89 (1984) (concluding that California, the forum state, was the "focal point both of the story and of the harm suffered" where an allegedly libelous story concerned the California activities of a California resident, was drawn from California sources, and the injury to the resident's profession was suffered in California, where her career was centered).

The Individual Defendants only alleged contact with New Mexico is Plaintiff's injury felt in New Mexico, but that alone is insufficient.  *See Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.").  Therefore, the communications alleged by Plaintiff from the Individual Defendants into the forum-state are insufficient to establish that Defendants expressly aimed their allegedly tortious conduct at New Mexico, nor does the fact that Defendants knew Plaintiff lived in New Mexico change the analysis.  *See Dental Dynamics*, 946 F.3d at 1232.

Based on the Court's findings that the Individual Defendants did not expressly aim their allegedly wrongful conduct at New Mexico, the Court concludes that Plaintiff has not established purposeful direction based on Defendants' contacts with New Mexico. Accordingly, Plaintiff has not satisfied his burden of showing that Defendants purposefully directed their activities to New Mexico such that they "should reasonably anticipate being haled into court" here.

### 3.  "Alter Ego" Theory

Plaintiff also argues that Defendant Scout Limited, the parent company of SSI, and Defendant SSI, its subsidiary, are virtually one and the same and "alter egos of each other," such that SSI's contacts with New Mexico could be imputed to Scout Limited.  *See* **Doc. 25, at 15**. Even assuming that Plaintiff has established sufficient minimum contacts for Defendant SSI, which it has not, Plaintiff's alter ego arguments are not persuasive.

"As a general rule, the mere relationship of [a] parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state." *See Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 32, 138 N.M. 607, 618, 124 P.3d 585, 596 (quoting *Smith v. Halliburton Co.*, 1994-NMCA-055, ¶ 8, 118 N.M. 179, 182, 879 P.2d 1198, 1201); Restatement (Second) of Conflict of Laws § 52 cmt. b (1971) ("Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[,] even [if] the parent owns all of the subsidiary's stock.")

However, an exception to this rule exists where circumstances justify disregard of the corporate entity, and in such cases, the contacts of the subsidiary may be imputed to the parent for purposes of establishing general jurisdiction over the parent.  *See Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974); *Benton*, 375 F.3d at 1080–81.  A court may deem a

subsidiary the alter ego of a parent and pierce the corporate veil where: (1) "the parent's control goes beyond that normally exercised by a majority shareholder" and is "so complete as to render the subsidiary an instrumentality of the parent;" or (2) "the subsidiary does an act at the direction of the parent, or in the course of the parent's business." *See Jemez Agency, Inc. v. CIGNA Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994) (internal quotations and citations omitted); *Weisler*, 2012 WL 4498919, at *11 (internal citations omitted).  Under either theory, the relevant factual inquiry is "whether the parent actually controlled its subsidiary—*i.e.,* exercised domination of the day to day business decisions of the subsidiary and a disregard of the corporate entity of the subsidiary—thereby giving rise to personal jurisdiction over the parent."  *See Weisler*, 2012 WL 4498919, at *12 (internal quotations and citations omitted); *Scott v. AZL Res., Inc.*, 1988-NMSC-028, ¶ 7, 107 N.M. 118, 121, 753 P.2d 897, 900 ("[W]here a subsidiary is a mere business conduit for the parent or where there is such unity of interest and ownership that the individuality or separateness of the two corporations has ceased, the parent may be [treated like] its subsidiary.").

In evaluating the extent of a parent's control over a subsidiary for jurisdictional purposes, courts have considered: (1) the parent corporation owns all or majority of the capital stock of the subsidiary; (2) the parent and subsidiary corporations have common directors or officers; (3) the parent corporation finances the subsidiary; (4) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; (5) the subsidiary has grossly inadequate capital; (6) the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division; (9) the directors or executives of the subsidiary do not act independently

in the interest of the subsidiary but take direction from the parent corporation; (10) the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. *Cruttenden v. Mantura*, 1982-NMSC-021, ¶ 8, 97 N.M. 432, 434–35, 640 P.2d 932, 934–35.

"Not all of these guidelines must be met, these are only factors for the trial court to consider in determining whether or not to recognize the corporations as separate entities." *Id.* Nevertheless, the "true inquiry must be focused on minimum contacts and not substantive principles of corporate law." *Alto*, 124 P.3d at 592.

In the instant matter, Plaintiff states that Defendant SSI is a wholly owned subsidiary of Defendant Scout Limited, and Scout Limited's "sole purpose is to hold SSI's stock. SSI, on the other hand, sells products, offers services, and conducts the company's business." *See* **Doc. 25, at 15**. Plaintiff's alter ego arguments rests on its assertion that Scout Limited and SSI operate as one; that in Scout Limited's prospectus and annual report materials, it refers to itself and SSI interchangeably; that both entities operate from Chicago, Illinois; and that the two entities share two board members, namely, Defendants Shapiro and Roberts. *Id.* According to Plaintiff, "[g]iven the relationship between SSI and Scout [Limited], the entities are alter egos of each other such that should the Court have jurisdiction over one entity, it also has jurisdiction over the other." *Id.*

Assuming that Plaintiff's factual assertions are true, the areas of overlap between the parent and subsidiary, taken together, are insufficient to demonstrate control or dominion appropriate for a determination of alter ego. First, the fact that the corporations share some officers and offices is not sufficient to demonstrate that Scout Limited is SSI's alter ego. *See Scott*, 753 P.2d at 900–01 ("[T]he ownership by one corporation of all or a majority of the stock of the other, or that the corporations have common officers and directors, or both, is not sufficient."); *Jemez*, 866 F. Supp. at 1344 ("Although some officer positions are held in common, 'identity of officers and directors

has been held insufficient to allow corporate veil piercing.'").  Second, "[r]eferences by a parent corporation to the business of its subsidiary as being part of the business of the parent does not serve to erase the substantive and legal distinction between corporations."  *Wirth v. PHC Las Cruces Inc.*, No. CV 20-1340 WJ/KK, 2021 WL 2805357, at *6 (D.N.M. July 6, 2021) (quoting *Berry v. Bryant*, 2012 WL 12819204, at *5 (D.N.M. 2012)).  Additionally, most of the remaining factors that the Court considers in determining alter ego are absent.  In sum, Plaintiff has failed to plead facts necessary to establish that Scout Limited and SSI are alter egos of each other, nor has Plaintiff come forward with evidence sufficient to make this prima facie showing.  Therefore, the Court concludes that there is no basis to exercise personal jurisdiction over Defendant Scout Limited.

### B.  Whether the Assertion of Personal Jurisdiction Comports with Fair Play and Substantial Justice.

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Stated differently, the inquiry is whether exercising jurisdiction would be reasonable.   In determining whether the Court's exercise of personal jurisdiction is reasonable, the Court considers five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.  *See OMI*

*Holdings*, 149 F.3d at 1095.  Here, having determined Plaintiff did not meet his burden of showing sufficient minimum contacts, the Court will not address these factors.[3]

### CONCLUSION

The Court finds that there is no personal jurisdiction over any Defendant.  Plaintiff has failed to sufficiently plead facts establishing general jurisdiction over Defendant SSI.  Plaintiff has also failed to sufficiently plead facts establishing jurisdiction over Defendant Scout Limited or show that Scout Limited is the alter ego of SSI in order to permit contacts from SSI to be imputed to Scout Limited.  Moreover, Plaintiff has failed to plead facts showing specific jurisdiction over any Individual Defendant.  Because the Court finds that Plaintiff has failed to plead jurisdiction over any Defendant, the Court declines to address the remaining substantive issues raised by Defendants' motion.

Plaintiff has also requested leave to amend the jurisdictional and substantive elements of his Complaint.  *See* **Doc. 26**.  At this stage in the case, amendment should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A court should grant leave to amend unless "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (quoting *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991)); *Staats v. Cobb*, 455 F. App'x 816, 818 (10th Cir. 2011) ("[A] court should dismiss *with leave to amend*…if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief.").  Here, the Court cannot conclude that an amendment to assert more facts regarding jurisdiction would be futile.  Thus, the Court will grant the motion as to the jurisdictional issues raised.

---

[3] Additionally, neither party addressed these factors.  *See* **Doc. 18, 25, 28**.

**IT IS ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (**Doc. 26**) is hereby **GRANTED IN PART** and **DENIED IN PART**, as set forth above.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (**Doc. 18**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that the Complaint (**Doc. 1-1, Ex. A**) is **DISMISSED WITH LEAVE TO AMEND**.  Plaintiff may file an amended complaint within **thirty (30) days** of the entry of this order.  If Plaintiff fails to timely amend, the Court may, upon motion of a party or *sua sponte*, dismiss the case with prejudice.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE